■ INTER-POWER OF NEW YORK, INC., Appellant-Respondent, v NIAGARA MOHAWK POWER CORPORATION et al., Respondents-Appellants. [617 NYS2d 562] —Crew III, J. P. Cross appeals from an order of the Supreme Court (Hughes, J.), entered August 19, 1993 in Albany County, which, *inter alia,* partially granted defendants' motion for summary judgment.

This action arises out of a power sales contract entered into between plaintiff and defendant Niagara Mohawk Power Corporation on or about February 16, 1988, under the terms of which Niagara Mohawk agreed to purchase power generated by a plant to be constructed by plaintiff in the Town of Halfmoon, Saratoga County. Insofar as is relevant to this appeal, the contract required that the proposed facility be operational by December 31, 1993. In the event that plaintiff was unable to meet this in-service deadline, Niagara Mohawk had the option of terminating the contract with plaintiff.

As part of the construction process for the proposed facility, plaintiff applied for a certificate of environmental compatibility and public need from the New York State Board on Electric Generation Siting and the Environment (hereinafter the Siting Board). While plaintiff's application was pending, it became apparent that plaintiff was not going to be able to meet the December 31, 1993 in-service deadline set forth in its contract with Niagara Mohawk. Although the Siting Board ultimately granted plaintiff the requested certificate in Sep-

tember 1992, it was subject to a number of conditions, including plaintiff's ability to obtain a new power sales contract.[1]

Niagara Mohawk thereafter announced its intention to terminate the contract, and plaintiff then commenced this action in March 1993 setting forth causes of action for, *inter alia,* breach of contract. Niagara Mohawk answered and along with the remaining named defendants moved for summary judgment contending, *inter alia,* that plaintiff should be estopped from pursuing this action based upon certain representations it made before the Siting Board.[2] Supreme Court rejected Niagara Mohawk's estoppel argument but dismissed plaintiff's ninth and eleventh causes of action seeking, respectively, a declaration that plaintiff was excused from complying with the in-service deadline due to impossibility and reformation of the contract based upon mutual mistake. These cross appeals ensued.

With respect to plaintiff's ninth cause of action, it is well settled that "[i]mpossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible" *(Kel Kim Corp. v Central Mkts.,* 70 NY2d 900, 902). Such impossibility, in turn, "must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract" *(supra,* at 902; *see, Matter of A&S Transp. Co. v County of Nassau,* 154 AD2d 456, 458). Although plaintiff contends that the regulatory delay which accompanied its application for a certificate under Public Service Law former article VIII was unforeseeable, this argument is belied by the record in this matter, which plainly reveals the complicated nature of plaintiff's application and the opposition thereto. Additionally, with respect to plaintiff's assertion that the parties had no reason to believe that the certification process would extend beyond the two-year deadline set forth in Public Service Law former § 143 (4), we note that the statute expressly permits the Siting Board to waive the two-year deadline "in order to give consideration to specific issues necessary to develop an adequate record", which is exactly what occurred here. Accordingly, plaintiff was on notice that this possibility could come to pass and, hence, could have provided for this very event in its contract with

---

1. Plaintiff's conditional permit was later revoked by this Court *(see, Matter of Commonwealth of Mass. v New York State Bd. on Elec. Generation Siting & Envt.,* 197 AD2d 97).

2. Plaintiff's cross motion for summary judgment with respect to certain affirmative defenses is not at issue on appeal.

Niagara Mohawk. Having failed to do so, plaintiff cannot now be heard to complain. Plaintiff's eleventh cause of action for reformation of the contract based upon mutual mistake fails for similar reasons.

Turning to defendants' cross appeal, we are of the view that defendants have failed to tender sufficient proof to invoke the doctrine of judicial estoppel, which "prevent[s] a party from inequitably adopting a position directly contrary to or inconsistent with an earlier assumed position in the same proceeding or a prior proceeding" *(Shepardson v Town of Schodack,* 195 AD2d 630, 632, *affd* 83 NY2d 894). Here, defendants rely upon certain statements made by plaintiff's representatives to the Siting Board during the proceedings conducted pursuant to Public Service Law former article VIII which, defendants assert, demonstrate that plaintiff was aware of, *inter alia,* Niagara Mohawk's option to terminate the contract. Having taken such a position before the Siting Board, defendants contend, plaintiff cannot now claim that Niagara Mohawk or a representative thereof somehow waived the December 31, 1993 in-service deadline. In our view, however, the passages cited in defendants' brief and motion papers are somewhat ambiguous and do not clearly convey plaintiff's alleged position on this point.

The parties' remaining contentions have been examined and found to be lacking in merit. As a final matter, we note that instead of dismissing plaintiff's ninth and eleventh causes of action, Supreme Court should have rendered a declaration in defendants' favor *(see, Maurizzio v Lumbermens Mut. Cas. Co.,* 73 NY2d 951, 954), and we modify Supreme Court's order accordingly.

Casey, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as dismissed plaintiff's ninth and eleventh causes of action; it is declared that plaintiff has not demonstrated that its compliance with the December 31, 1993 in-service deadline set forth in the parties' contract was excused by the doctrine of impossibility of performance or due to a mutual mistake of the parties; and, as so modified, affirmed.